## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 19-11791 (BLS) |
| OLD LC, INC. | ) | |
| (F/K/A LOOT CRATE, INC.), *et al.*,[1] | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| OLD LC, INC. | ) | |
| (F/K/A LOOT CRATE, INC.), | ) | Adversary Proceeding No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| WORLDPAY, LLC (F/K/A VANTIV, LLC) | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT TO DETERMINE EXTENT OF LIEN, DECLARATORY RELIEF, MONETARY DAMAGES, PUNITIVE DAMAGES, AND OTHER RELATED RELIEF

For its complaint, Old LC, Inc. (the "*Plaintiff*"), by and through its undersigned counsel, alleges as follows:

### Parties, Jurisdiction, and Venue

1.    The Plaintiff is a Chapter 11 debtor and debtor-in-possession in the above-captioned jointly administered bankruptcy cases.

2.    Worldpay, LLC (f/k/a Vantiv, LLC) (the "*Defendant*") is a Delaware corporation with its principal offices located in Cincinnati, Ohio.

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court

---

[1] The Debtors are the following four entities: Old LC, Inc. (f/k/a Loot Crate, Inc.), Old LC Holdings, Inc. (f/k/a Loot Crate Holdings, Inc.), Old LCF, Inc. (f/k/a LC Funding, Inc.), and Old LC Parent, Inc. (f/k/a Loot Crate Parent, Inc.).

for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(A), (E), (K) and (O).

4.      Venue of these Cases is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested in this Complaint include 11 U.S.C. §§ 105, 362, and 506, and Federal Rules of Bankruptcy Procedure 3012, 6004, 6009, 7001(1), (2), (7), and (9).

### General Allegations

6.      On August 11, 2019 (the "***Petition Date***"), the Plaintiff filed a voluntary petition with this Court under Chapter 11 of Title 11 of the United States Code (the "***Bankruptcy Code***"). The Plaintiff's Chapter 11 case is consolidated for procedural purposes only and administered jointly with the Chapter 11 cases of the Plaintiff's affiliates (collectively, the "***Cases***").

7.      The Plaintiff and its affiliate debtors (collectively, the "***Debtors***") are authorized to continue to operate and manage their businesses and assets as debtors-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On or about August 11, 2019, the Defendant was notified of the Debtors' Chapter 11 bankruptcy filings, and on or about August 12, 2019, the Defendant had actual notice and knowledge of the Debtors' Chapter 11 bankruptcy filings.

9.      On October 1, 2019, the Bankruptcy Court entered the *Order (A) Approving the Sale of the Debtors' Assets, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Certain Related Relief* [D.I. 254 in *In re Loot Crate, Inc.*, Case No. 19-11791 (BLS)] (the "***Sale Order***").  The Sale Order approved the

sale of substantially all of the Debtors' assets to Loot Crate Acquisition LLC (the "*Sale*").  The
Sale closed on October 1, 2019.

10.     Prior to the Sale, the Debtors operated a subscription box service that catered to
fandom and enthusiasts through "crates" curated with "geek and gamer products" each month.

11.     Since approximately July 28, 2017, the Defendant has processed credit card
payments for customers of the Plaintiff pursuant to a Bank Card Merchant Agreement (as
amended, supplemented, or modified, and including all exhibits and schedules, the "***Processing
Agreement***").

12.     Pursuant to Section 37 of the Processing Agreement (as amended), the Plaintiff
granted to the Defendant "a security interest in all accounts owned or controlled by [Defendant]
at Member Bank that are funded with settlement amounts, including the Reserve Account, and
the proceeds thereof[.]"

13.     The Processing Agreement authorizes the Defendant to (i) establish from amounts
payable to the Debtors under the Processing Agreement, and/or cause the Debtors to prepay to
the Defendant, a reserve of funds satisfactory to the Defendant to cover anticipated fees,
chargebacks, returns, and any other applicable assessments and/or (ii) require the Debtors to
establish an irrevocable standby letter of credit in a form and amount acceptable to the Defendant
in its sole discretion, as collateral for, among other things, anticipated chargebacks and fees.
Processing Agreement § 20.  Further, the Processing Agreement authorized the Defendant to
charge the Plaintiff a fee calculated as a percentage of each payment processed for the Plaintiff
by the Defendant ("***Processing Fee***").

14.     Customer payments processed for the Plaintiff by the Defendant would be batched and transmitted daily to the Plaintiff after setting off from such amounts any customer refunds or disputed charge reimbursements paid by the Defendant to the Plaintiff's customers.

15.     The Defendant has a contingent claim to the extent the Plaintiff does not ship goods to customers who have already paid via the Defendant's credit card payment processing service.  Such customers could then, depending on their agreements with the Defendant (or the Defendant's counterparties, such as the actual credit card issuer) and applicable law, request a refund or dispute prior charges, which may then have to be returned to the customers' credit card issuer (and in turn, the customer) by the Defendant.

16.     Any claim held by the Defendant against the Plaintiff's bankruptcy estate is contingent, unliquidated, and disputed.  Likewise, any claim held by the Defendant against the Plaintiff's bankruptcy estate would be a pre-petition claim, to the extent it arose from any pre-petition payment by one of the Plaintiff's customers, or to the extent it arose from any pre-petition contract or subscription entered into by one of the Plaintiff's customers and the Plaintiff.

17.     Each crate the Plaintiff ships to a customer who paid using the Defendant's payment processing services reduces the contingent liability owed to the Defendant.  In other words, as the Plaintiff ships crates, it reduces the claims of potential customers, who could otherwise utilize their credit card agreements and applicable law to "charge back" the amount, resulting in the Defendant having to reimburse such customers.  The Defendant thus benefits greatly from the Plaintiff's expenditure of funds and effort to ship crates to customers.

18.     As set forth in more detail in the *Declaration of Stuart Kaufman in Support of First Day Motions and Related Relief* (the "***First Day Declaration***") [D.I. 4 in *In re Loot Crate, Inc.*, Case No. 19-11791 (BLS)], which is incorporated by this express reference, in the months

- 4 -

leading up to the Petition Date, the Plaintiff experienced liquidity shortfalls that greatly harmed its ability to timely fulfill customer orders.  Those liquidity shortfalls led to an increased number of customer requests for refunds or disputed charge reimbursements.

19.     Prior to the Petition Date, and based upon the financial position of the Debtors and the contractual terms agreed to between the parties, the Defendant withheld and reserved a portion of certain payments made by the Plaintiff's customers using the Defendant's credit card processing services (the "***Reserve***").

20.     As of the Petition Date, the Reserve was approximately $1,736,135.06.  Such Reserve did not materially increase or decrease in the weeks after the Petition Date.  However, the Defendant has not returned the Reserve, either to the Plaintiff nor to Loot Crate Acquisition LLC, the buyer of the Plaintiff's assets in the Sale.  Moreover, the Defendant has at various times during the Cases (i) increased the Reserve, without reason or cause (and in violation of representations made by the Defendant during the Cases), and (ii) applied the Reserve against pre-petition claims.

21.     The Defendant's withholding and retention of the Plaintiff's revenue does not take into account the reduced risk of customer refunds or disputed charge reimbursements once the Plaintiff ships product (and as set forth below, since the Petition Date, the Plaintiff has shipped over five million dollars in product to Defendant's customers); rather, the Defendant assumes all payments are equally subject to refund and/or disputed charge reimbursement risk regardless of product order fulfillment status.

22.     The Defendant's withholding and retention of the Plaintiff's revenue deprives the Plaintiff of its ability to wind-down the Chapter 11 Cases and fulfill its obligations under the Sale Order.

23.     Since the Petition Date and prior to the Sale, the Plaintiff reorganized certain of its business practices (such as redefining subscription payment policies to account for shorter, single-period subscriptions) to minimize the Defendant's risk of exposure for loss due to customer requests for refunds or charge dispute reimbursements.

24.     In addition, since the Petition Date and prior to the Sale, the Plaintiff shipped approximately $5,417,585.64 in customer orders placed using the Defendant's services, thereby reducing the Defendant's potential exposure to chargebacks by at least that amount.

25.     The total post-petition, pro-rated operating costs and expenses, including cost of goods, incurred by the Plaintiff to ship crates for which customers had paid via the Defendant's processing services, is approximately $5,737,448.20.

### Count One
### 11 U.S.C. § 506 - Surcharge

26.     The Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

27.     The Defendant asserts that it is a secured creditor of the Plaintiff's bankruptcy estate.

28.     The costs and expenses incurred by the Plaintiff to fulfill customer orders placed through the Defendant's payment processing services directly and specifically preserve, on a dollar-for-dollar basis, the property in which the Defendant asserts a security interest.

29.     As set forth above, post-petition, the Plaintiff has sent approximately $5,417,585.64 in customer orders placed using the Defendant's services, thereby reducing the Defendant's potential liability and hence preserving the Defendant's collateral – the property securing its claim – for such amounts.

30.     In addition, the operating costs and expenses incurred by the Plaintiff post-petition directly and specifically preserve, on a pro-rated basis, the Defendant's collateral – the property securing its claim.

31.     To date, the post-petition, pro-rated operating costs and expenses, including cost of goods, incurred by the Plaintiff to ship crates for which customers had paid via the Defendant's processing services, is approximately $5,737,448.20.[2]

32.     The Plaintiff is entitled to declaratory judgment that pursuant to 11 U.S.C. § 506(c), the Plaintiff is entitled to surcharge the Defendant for the value of, and the amount of all costs and expenses incurred by the Plaintiff to fulfill, customer orders placed through the Defendant's payment processing services, on a dollar-for-dollar basis.

33.     The Plaintiff is entitled to declaratory judgment that pursuant to 11 U.S.C. § 506(c), the Plaintiff is entitled to surcharge the Defendant for the *pro rata* proportion of the Plaintiff's operating costs and expenses.

34.     The Plaintiff is entitled to monetary judgment against the Defendant on account of the not less than $11,155,033.84 it expended for the benefit of the Defendant and the Defendant's collateral, to the greatest extent permitted by 11 U.S.C. § 506(c), for all such surcharge amounts as determined by this Court.

### Count Two
### 11 U.S.C. § 362 – Violation of the Automatic Stay

35.     The Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as though fully set forth herein.

---

[2] The Plaintiff reserves the right to seek any additional surcharge amount for the costs of the bankruptcy cases, including interest and fees on financing incurred by the Plaintiff to maintain its operations, legal fees and costs, and other amounts attendant to continuing to operate in Chapter 11.

36.     The automatic stay of 11 U.S.C. § 362 became effective on the Petition Date as to the Plaintiff, the Plaintiff's property, and the property of the Plaintiff's bankruptcy estate.

37.     The Defendant has known of the Plaintiff's Chapter 11 bankruptcy filing since August 12, 2019, the day after the Petition Date.

38.     Despite the Defendant's knowledge of the Plaintiff's Chapter 11 bankruptcy filing, the Defendant has withheld and/or retained, and continues to withhold and/or retain, funds belonging to the Plaintiff's bankruptcy estate in order to recover a disputed, contingent, unliquidated prepetition claim against the Plaintiff.

39.     Despite the Defendant's knowledge of the Plaintiff's Chapter 11 bankruptcy filing, the Defendant has exercised control over funds belonging to the Plaintiff's bankruptcy estate.

40.     Despite the Defendant's knowledge of the Plaintiff's Chapter 11 bankruptcy filing, the Defendant has taken steps to enforce a lien against funds belonging to the Plaintiff's bankruptcy estate.

41.     Despite the Defendant's knowledge of the Plaintiff's Chapter 11 bankruptcy filing, the Defendant has set off against the Plaintiff's funds in the Defendant's possession on account of the Defendant's prepetition claim against the Plaintiff, or in the alternative is currently withholding funds on account of the Defendant's prepetition claims against the Plaintiff.

42.     Each of the actions described in Paragraphs 38 through 41 constitutes a separate violation of the automatic stay of 11 U.S.C. § 362.

43.     The Defendant has not sought any relief from the automatic stay.

44.     Because the Defendant had knowledge of the automatic stay and intended the actions described above, the Defendant's violations of the automatic stay were willful.

45.     The Plaintiff is entitled to declaratory relief that the actions taken by the Defendant as described herein violate the automatic stay of 11 U.S.C. § 362.

46.     The Plaintiff is entitled to injunctive relief enforcing the automatic stay of 11 U.S.C. § 362 as it relates to the Plaintiff's customer payments processed by the Defendant.

47.     The Plaintiff is entitled to monetary damages, including actual, exemplary, and punitive damages, for the actions taken by the Defendant in violation of the automatic stay of 11 U.S.C. § 362.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays that this Court enter judgment in its favor, and against the Defendants jointly and severally, as follows:

(i)     for declaratory judgment that pursuant to 11 U.S.C. § 506(c), the Plaintiff is entitled to surcharge the Defendant for the amount of all costs and expenses incurred by the Plaintiff to fulfill customer orders placed through the Defendant's payment processing services, on a dollar-for-dollar basis, at least up to the full value of the Defendant's collateral;

(ii)     for declaratory judgment that pursuant to 11 U.S.C. § 506(c), the Plaintiff is entitled to surcharge the Defendant for the *pro rata* portion of the Plaintiff's operating costs and expenses;

(iii)     for monetary judgment against the Defendant pursuant to 11 U.S.C. § 506(c) for all surcharge amounts as determined by this Court, estimated as set forth above as approximately $11,155,033.84;

(iv)     for declaratory relief that the actions taken by the Defendant violate the automatic stay of 11 U.S.C. § 362;

(v)     for injunctive relief enforcing the automatic stay of 11 U.S.C. § 362 as it relates to the Plaintiff's customer payments processed by the Defendant;

(vi)     for monetary damages, including actual, exemplary and punitive damages, for the actions taken by the Defendant in violation of the automatic stay of 11 U.S.C. § 362;

(vii)     for an award against the Defendant and in favor of the Plaintiff for the Plaintiff's reasonable attorneys' fees and costs in bringing this action; and

(viii)     for such other and further relief deemed just and appropriate under the circumstances of this case.

*[remainder of this page intentionally blank]*

Dated: October 16, 2019
Wilmington, Delaware

**ROBINSON & COLE LLP**
Natalie D. Ramsey (No. 5378)
Jamie L. Edmonson (No. 4247)
Mark A. Fink (No. 3946)
1000 N. West Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 295-4800
Facsimile:   (302) 351-8618
Email:  nramsey@rc.com
         jedmonson@rc.com
         mfink@rc.com

*Co-counsel to the Debtors and Debtors-in-Possession*

**BRYAN CAVE LEIGHTON PAISNER LLP**
*/s/ Mark I. Duedall*
Mark I. Duedall (No. 3346)
Leah Fiorenza McNeill *(Admitted pro hac vice)*
Khaled Tarazi *(Admitted pro hac vice)*
1201 W. Peachtree Street, NW, 14ᵗʰ Floor
Atlanta, Georgia 30309-3471
Telephone: (404) 572-6600
Facsimile:  (404) 572-6999
Email: mark.duedall@bclplaw.com
        leah.fiorenza@bclplaw.com
        khaled.tarazi@bclplaw.com

**BRYAN CAVE LEIGHTON PAISNER LLP**
Andrew J. Schoulder *(Admitted pro hac vice)*
1290 Avenue of the Americas
New York, New York 10104-3300
Telephone: (212) 541-2000
Facsimile:  (212) 541-4630
Email: andrew.schoulder@bclplaw.com

*Co-counsel to the Debtors and Debtors-in-Possession*